Mr. Justice CATRON
 

 delivered the. opinion of the court.
 

 Parrish filed his bill in. equity against Lownsdale and others in a District Court of Oregon' Territory, praying for an injunction to restrain the defendants from obstructing a narrow.
 
 *292
 
 piece of land, claimed as Water street, lying in front of the complainant’s storehouse, and a square of ground claimed as his, two hundred feet on each side, laid off into eight lots, as city property, within the city of Portland, and on one of which the storehouse stands. The strip of land lying in front of these lots extends to the Wallamette river; at that point, the land is several hundred feet wide. The complainant alleges that it was dedicated to the public as a street, to the use of the proprietors of the town, for thepurposes of commerce; the river there being within the flow of tide, navigable for ships, and requiring á wide front space to accommodate loading and discharge of cargoes.
 

 The District Court found that Water street, in the city of Portland, was bounded by the river, opposite the lots of the complainant; and that the defendants at the commencement of the suit were about to obstruct the same, to the special in-j ury of the plaintiff, as stated in the bill; and thereupon an injunction was granted, as prayed for. This decree was affirmed in the. Supreme Court of Oregon, where the respondents carried the cause by appeal, and from that decree they have appealed to this court, and we are called on to revise ¡the proceedings below.
 

 The first question presented is, whether this court has jurisdiction and power to re-examine the controversy.
 

 By the act of Congress organizing the inhabitants of Oregon Territory into a Government, it is provided (sec. 9) that writs of error and appeals from final decisions of the Supreme Court of Oregon shall be' allowed to the Supreme Court of the United States, where the value of the<property, or the amount in controversy, shall exceed two thousand dollars, to be ascertained by the oath of either party,' or by a competent witness; and also in cases “where the Constitution of the United States, or an act of Congress, or a treaty of the United States, is brqught in question.” '
 

 The complainant assumes that he would sustain special-.damage-by the-obstruction of the space between his property and the river, but how much damage does not appear from the allegations in the bill, or otherwise; and it is difficult-for us to
 
 *293
 
 see how either party to the suit could sustain damage to his rights of property, as the town was laid off in 1845, on property of the United States, whilst our inhabitants who had emú grated there, and'those of Great Britain, held joint possession of the country in virtue of the treaty between the two nations of October 20th, 1818, (art. 13,) which was continued in force by the convention of August 6th, 1827.
 

 In June and July, 1845, the people of Oregon Territory, “for mutual protection, and to secure peace and prosperity among themselyes,” elected delegates, who met in convention, and adopted laws and regulations for their government, “until such time (say they) as the United States of America extend jurisdiction over iis.” 'In this plan of Government, it is provided that any one wishing to establish a claim to land shall designate the extent of his claim by line-marks, and have it recorded in the office of the Territorial recorder; the claim not to exceed a mile square, or 640 acres. The description of claim under which the complainant and the respondents set up title is founded on this regulation. By the treaty of 15th June, 1846, the line dividing our possessions and those of Great Britain west of the Rocky Mountains was concluded; and on the 14th of August, 1848, Congress passed an act to establish the Territorial Government of Oregon, in which the laws then existing under the provisioxxal Government (established by the people) are continued, and declared to be operative until altered. “But (says the act, sec. 14) all laws heretofore passed in said Territory, making grants of land, or otherwise affecting or encumbering the title to lands, shall be, and are hereby declared to be, null and void.” Congress passed no law in any wise affecting title to lands in Oregon Territory till September 27, 1850; and the bill in this case was filed Jiily 29, 1850, so that, when the litigation commenced, neither party to the suit had any title to or interest in the land whatever; and therefore the respondents and appellees could not sustain injury by being enjoined not to erect buildings on lands belonging to the Government in which they had. no interest. It is proper to remark here, that we have nothing to do with, nor can we notice, rights acquired to this
 
 *294
 
 property by acts of Congress passed subsequently to tbe origin of this controversy.
 

 Neither the Constitution of the United States, nor an act of Congress, or a treaty, was “
 
 brought
 
 in question ” in the lower court; neither side could have legitimately raised such a question, and called for its decision;. and to give this court jurisdiction of the case, in this instance, the question must have been raised and decided in the lower courts, and it must so appear , on the record. (16 Peters, 281.)
 

 Being of opinion that there is no jurisdiction in this court to examine; and revise the decree of the Supreme Court of Oregon, wé óMer the appeal to be dismissed.