The jury rendered a verdict in favor of the defendants for $1400. (b)

---

CIRCUIT COURT FOR WASHINGTON COUNTY, OCTOBER TERM, 1869.

## CHARLES S. WHITE et al. v. ISAAC ALLEN.

THE DONATION LAW.—DECEASED WIFE.—Where a husband and wife settled upon 640 acres of land in 1844, and the family continued to reside upon and cultivate the land, but the wife died on the twenty-sixth day of September, 1850, no land was granted to the wife by the donation act, and the survivor can take under that act but 320 acres.

PLEADING.—Evidence ought not to be inserted in, or made part of an answer.

MOTION TO STRIKE OUT.—On a motion to strike out part of an answer, if the motion contains but a single specification, and includes some matters that ought not to be struck out, the whole motion must be denied.

EQUITABLE DEFENSE.—It is essential to an equitable defense that the defendant has no legal defense.

BILL OF REVIEW.—A defective decree may be reformed under a prayer for general relief.

PATENT TO A WRONG PARTY, NOT VOID.—Where equity relieves from the effect of issuing a patent to a wrong party, the patent is held to be effective to pass the title from the United States, but the patentee is held to be a trustee for the benefit of the rightful claimant.

SUPPLEMENTARY ANSWER.—Material facts that did not exist at the commencement of the suit may be set up by supplementary answer.

---

ERROR MAY BE CURED.—If it is error for a witness to voluntarily state the contents of a written memorandum, the error will not vitiate the residue of his deposition if he at the time produce and exhibit the memorandum.

MEMORANDUM.—The fact that a witness has looked at a memorandum to refresh his recollection before being called, does not render him incompetent.

A PATENT IS PROOF OF REGULARITY OF PROCEEDINGS.—After a patent has issued, the exhibition of the patent proves the regularity of preliminary proceedings.

SUPREME COURT.—If the question whether a woman who died before September 27, 1850, or her representatives, become entitled under the donation act, is still open to discussion, since the ruling in *Ford* v. *Kennedy*, 1 Oregon, 166, its review should be had in the supreme court.

PRIVITY.—One who has no right to or interest in the land cannot set up the disqualification of a donee. But one who settled on government land, in compliance with the donation act, while it was still government land and before a certificate issued to another, acquired such an interest as rendered him competent to set up the disqualification.

BILL OF REVIEW.—By our code, § 377, whatever subject matter could formerly have been presented by any of the various formal bills in chancery, may now be brought before the court as an " original suit;" and if the subject matter constitutes a defense, it may now be presented by an answer.

*W. W. Chapman,* for the plaintiff.

*Mitchell & Dolph* and *W. D. Hare,* for the defendants.

THE complaint in this case is in the statutory form for the possession of a parcel of land in Washington County, known as the north half of the "White Donation Claim."

The answer is voluminous, containing copies of sundries, documents and records. Its material parts are as follows:

It denies plaintiff's ownership of the premises and right of possession, and alleges that one Samuel P. Soule, a white male citizen of the United States, and then a married man and resident in Oregon, and entitled as a donee under the donation law, settled upon the lands in controversy, March 27, 1855, and from that time, with his wife, resided upon and cultivated the said premises for four consecutive years, claiming the same as a donation from the United States. And before November 17, 1860, said Soule and his said wife became owners of said lands by virtue of a full compliance with the donation law; having filed with the register of the land office his notification and proofs.

That on the seventeenth of November, 1860, the defendant purchased from said Soule and wife, for a valuable consideration, one parcel (designated in the answer) of said premises; which parcel said Soule and wife then conveyed to him by their deed; and about that time said Soule and wife, for a valuable consideration, conveyed to defendant the residue of said premises, "by a mortgage duly executed and delivered, and they at that date delivered to the defendant the possession of the whole of said tract of land under said deed and mortgage."

That prior to September 27, 1850, Richard White, one of said plaintiffs, and his then wife, Caroline White, who was the mother of the other plaintiffs aforesaid, claimed a tract of six hundred and forty acres of land that included the premises in controversy. But that said Caroline departed this life on the twenty-sixth of September, 1850. That said Richard White, on the tenth of November, 1859, elected to to take, and did take, the south half of said tract, containing three hundred and twenty acres, being the south half of the said parcel known as the "White Donation Claim." And the said Richard White, for himself and the heirs of said Caroline, abandoned the premises in controversy.

That after defendants' said purchase, said Richard White, on the twenty-second of September, 1862, by means of false, fraudulent and *ex-parte* affidavits, procured a donation certificate, for the whole six hundred and forty acres, to be issued to him and to the said Caroline White, and afterwards, and by means aforesaid, procured a patent to be issued, granting the south half of said tract to said Richard, and the said north half to the said heirs of said Caroline White. That this defendant, on the sixteenth of February, 1863, commenced a suit in this court against these plaintiffs, setting up the foregoing facts as cause of suit, and said plaintiffs were duly served with process therein, and such proceedings were therein had; that this court, on the twenty-second day of December, 1863, rendered a decree therein decreeing against these plaintiffs: "That all benefit and advantage of said certificate, or any patent that may be issued in pursuance thereof, be vested in plaintiff (this defendant

meaning), and that said certificate, or any patent that *may be* issued in pursuance thereof, *be adjudged void* and of no effect as to said plaintiff (meaning this defendant), and that said plaintiff (meaning this defendant) be adjudged to be the absolute owner of said land in fee, and that said defendants (these plaintiffs meaning) be adjudged to have no right thereto or therein." The answer prays that plaintiffs be compelled to convey to defendant the premises; that any color of title which plaintiffs may have in the premises, be decreed to be held for the benefit of the defendant, and the answer concludes with the prayer for general relief.

The plaintiff moved to strike out a part of the answer, including copies of affidavits and of divers other papers used and filed in the surveyor-general's office, which were annexed to and declared to be made a part of the answer.

The court held that some of the matters embraced in the motion were statements of fact material to the defense set up, and for that reason overruled the motion; but expressed the opinion that if the motion had pointed to the copies alone, the motion should be granted, and that setting forth in the pleadings such copies, or any other matter that is merely evidence, is an inconvenient and troublesome practice not authorized by the Code.

The plaintiff demurred to all that part of the answer that precedes the allegations in regard to a former suit, that it "does not constitute a defense in equity;" and to so much as relates to the former suit, "that it does not constitute a suit or defense in equity, and if pleadable at all is pleadable in law;" and that the facts there set forth are the same facts stated in the first mentioned part of the answer.

*By the Court,* UPTON, J. If the decree that the defendant sets up is effective to confer the legal title on the defendant at the present time, the decree is a good defense at law, and it is upon this idea that the plaintiffs' counsel claims that the first part of the answer is bad, being an attempt to set up both an equitable and legal defense at the same time. If one have a good defense at law, he cannot be heard to set up an equitable defense. It is a *sine qua non* in an equit-

able defense, that the plaintiff has no defense at law. I am of opinion that the decree is not available, as conferring the legal title, or as a good defense at law. It was within the power of the court in the former suit to have compelled the parties who are now plaintiffs to execute conveyances, but the decree stops short of that. The decree seems to be, in fact, somewhat vague if not contradictory in itself; for it directs that the certificate or any patent issued in pursuance thereof be adjudged void and of no effect. The theory of cases where equity has relieved a rightful claimant under a patent issued to a wrong party, is, that such patent is effective to pass the title from the United States,—but the patentee is held to be a trustee for the benefit of the rightful claimant. The case made by the answer warrants the defendant, if he can now show that he is entitled to the premises, in asking to have the decree reformed for the purpose of enabling him to obtain the legal title. The material facts stated as new matter in that part of the answer that precedes the statement of a former suit, are those upon which the former suit is based, and are material and necessary to be set out in some form in his present answer, if the defendant would show a case in the nature of a bill of review or bill to reform the decree. These statements of fact, with the allegations in regard to the former suit, should all be taken as constituting but one defense.

The demurrer was overruled and the plaintiff filed a replication putting in issue much of the new matter alleged in the answer, and stating that said Richard White had no authority to bind the other plaintiffs by his alleged abandonment of the premises.

The answer was filed on the 17th of May, 1869. A replication was filed May 19.

At the October term, 1869, the defendant filed an affidavit showing that said S. P. Soule resides in Washington Territory; that in August last the defendant sent to said Soule a blank deed to be executed by Soule for the purpose of conveying to the defendant, in fee, the premises embraced in the mortgage; that on the day of filing the affidavit the de-

fendant had learned for the first time that the deed was executed and delivered. And the defendant moved the court for leave to file a supplementary answer. The plaintiff opposed the motion. The leave being granted, the defendant filed a supplementary answer, setting up that for the purpose of saving the expense of a foreclosure of the mortgage, said Samuel P. Soule and his wife conveyed said premises, in fee, to this defendant on the 6th of September, 1869.

On the trial the only material question of fact upon which the evidence was conflicting or doubtful, was the date of the decease of Caroline White, the wife of the plaintiff Richard, and the mother of the other claimants. The evidence establishes the fact that her decease took place on the 25th or 26th day of September, 1850, either one or two days before the passage of the donation act. The evidence shows that Richard White and his said wife settled upon 640 acres, including the land in controversy, in 1844, and resided upon it and cultivated a portion of it, up to the time of the wife's death; and that Richard White, with his children, continued to reside in the same house, situated on the south half of the 640 acres up to 1855 or 1856. Richard, White filed a notification for himself and his wife's heirs December 9, 1852, claiming the whole 640 acres. He was afterwards advised that he could not hold more than 320 acres, in consequence of his wife having died before the passage of the donation law; and, if compelled to select, he preferred the south half.

At the land office an indorsement was written on the notification previously filed by him, in the following words:

"To C. R. Gardiner, Surveyor-General of Oregon: Being reduced to 320 acres, in consequence of the death of my wife before the 27th of September, 1850, I desire to retain the south half of my original claim.

Salem, Nov. 10, 1859.

RICHARD WHITE."

Said Richard White testified on the trial that the indorsement was written by the surveyor-general without White's request, and being advised by the surveyor-general that it

was necessary for him to sign it, he did so, knowing but little about his rights or the nature or effect of the indorsement.

Soule and his wife settled upon the north half March 27, 1855, filed a notification and settler's oath May 31, 1855, preliminary proof March 21, 1856, and final proof April 1, 1859. Soule and wife deeded to the defendant, Nov. 17, 1860, one part, and mortgaged the residue, and let the defendant into possession of the whole June 8, 1858. Soule was notified at the time of his settlement by the plaintiffs that the land was claimed by them. January 3, 1861, an order was made at the land office, that said Soule appear and show cause why a certificate should not issue to Richard White and the heirs of Caroline White.

It does not appear that either the defendant or Soule was notified of the order. Proceedings were taken at the land office, upon the notification filed by White on December 9, 1852, which resulted in a certificate issued September 22, 1862, to Richard White, for the south half of the claim, and to the heirs-at-law of Caroline White, for the premises in controversy, which certificate was followed by a patent, issued September 11, 1865.

The case was argued and submitted for final determination, on the pleadings and proofs.

UPTON, J., filed the following opinion:

Before examining what I deem the merits of the case, it is proper to refer to some points that arose in the course of the trial.

The deposition of Dr. Barclay was taken, out of court, before the trial. He deposed that Mrs. Caroline White departed this life on the twenty-sixth of September. That he noted the day of her death in his medical day-book, in these words: "Mrs. White died this morning." The answer was objected to as incompetent and not the best evidence. On cross-examination, he deposed in answer to interrogations, "I have examined the memorandum this morning." "Without looking at the memorandum, I could have stated the fact, but could not state the day of the month." "I

examined the memorandum some years ago, when a witness in the same matter, and have always recollected the day and date since that time."

The witness presented the book to the plaintiff's attorney at the time the deposition was taken.

On re-direct examination, the witness deposed: "I made the memorandum on the day of the occurrence. Since examining it, I know that the death occurred on the twenty-sixth of September, 1850."

The plaintiffs *now* move to suppress the deposition, because of the witness having looked at, and quoted from, a memorandum that is not *now* produced.

I think the motion to suppress the deposition should not be sustained. If the book had not been produced, the reasons for the motion would have been much stronger. Since the taking of the deposition, the production of the book is within the power of either party; and the cross-examiner has had an opportunity to inspect it. The quotation from the book was not competent evidence, but it was not asked for by either party. This parol evidence of the contents should be rejected, but there is no good ground for suppressing the whole deposition. The fact that a witness has refreshed his recollection by examining a memorandum recently before taking the stand, may go to the credibility of his statements, and is a proper matter of cross-examination, but it does not render him incompetent.

The objection to the supplementary answer, which the defendant has been permitted to file, would be of more weight, if the plaintiffs had shown that they had been misled, or taken by surprise. No objection, that the previous conveyance from Soule and wife was a mortgage and not an absolute deed, seems to have been made in the previous suit, nor on the demurrer in this suit, nor until after leave was asked to file the supplementary answer. The mortgage on the one part of the premises, accompanied by delivery of possession, seems to have been treated by all parties as if it was a conveyance in fee. The defendant, from the first, had an unconditional conveyance of one part of the subject matter of the suit, and as an unconditional conveyance of

the other part has taken the place of the mortgage pending
the suit, I think it is beyond question that leave to file the
answer was properly granted.

As to the alleged abandonment. If the plaintiffs ever
became entitled to the land, it is not important whether or
not Richard White once believed that he and the other
plaintiffs were not entitled, or whether he once abandoned
the intention of prosecuting their claim; for that would not
divest him of a title actually acquired, much less would it
divest the other plaintiffs. If the plaintiffs were persons
entitled to claim a donation under the donation law, the legal
title vested in them on the passage of the act, and not at
a subsequent time. (13 Pet. 499.) If they ever had the
legal title, the evidence fails to show that it has been
divested by abandonment.

The objections made to the mode of proofs and other
preliminary steps taken by White, in the land department,
are of no force, because the patent proves the regularity of
all preliminary proceedings. *Hoofnagle* v. *Anderson* (7
Wheat. 214.)

The case on its merits presents but two or three questions
for consideration:

*First.* Did the settler, whose wife had died before the
passage of the donation law, and the children of the deceased
wife, become entitled to the three hundred and twenty acres
known as the wife's share?

*Second.* If they did not, and were persons not author-
ized to take the donation, is the defendant in an attitude to
raise the question of disqualification?

*Third.* Is it competent in this proceeding, to reform the
decree rendered in the former suit?

The first of these questions was substantially determined
by the supreme court of the territory of Oregon, in the case
of *Ford* v. *Kennedy*, 1 Or. 166. The granting clause of the
donation act relied upon by the plaintiffs, is in these words,
"And in all cases where such married persons have complied
with the provisions of this act, so as to entitle them to the
grant, as above provided, whether under the late provisional
government of Oregon, or since, and either shall have died

before patent issues, the survivor and children or heirs of the deceased, shall be entitled to the share or interest of the deceased in equal proportions." That court said, "The right to take donations under that section, is restricted to persons now residing in said territory, or who shall become residents thereof, on or before the first day of December, 1850. 'Such,' then, in that clause of the act, relates to the foregoing, as well as to the other qualifications of grantees under that section, and makes the clause mean as if it read, 'In ,all cases, married persons now residing in, or who shall become residents.'" The court refused to give the act a retro-active effect, or to adjudge a grant to, or a title in, persons who died before the passage of the act.

The facts of the present case differ from those in *Ford* v. *Kennedy*, in that the husband, as well as the wife in that case, died before the passage of the act. But if the principle there announced, is correct, it is fatal to the position here taken by plaintiffs' counsel, because, unless the law can have a retro-active effect, the donee, being a "single man" on the day the act passed, and not since married, within the period allowed for taking a claim, is limited by the terms of the act to 320 acres.

The soundness of the principle there announced, is attacked by the plaintiffs' attorney, whose argument displays great care and research in the examination of the subject. He claims that the donation law, both in spirit and by its terms, recognizes rights acquired under and sanctioned by the provisional government, and that the supreme court fell into an error by not giving sufficient consideration to the expression, "Whether under the late provisional government or since," and to the situation and condition of the territory and its inhabitants, at the time of the passage of the act. With that opinion standing as the decision of the supreme court, it would be supererogation for this court to enter into the subject further than to say, that the reasoning of the plaintiffs' counsel does not present that certainty, and that clear conviction of error, in the prior adjudication of the point, that warrants a circuit court, in departing so far from the rule, *stare decisis*, as to disregard what seems to

have been contemporaneous construction by the land department, as well as the decision of the highest tribunal of the territory, and to be in accord with the position announced by the supreme court of the United States, in the case of *Lownsdale* v. *Parrish*, 21 How. 290. If this question is still open to examination, its review should be had in the supreme court, either of this state, or of the United States.

The second question refers to the right of the defendant to raise the question of the plaintiffs' disqualification. There is a class of cases where land has been erroneously granted by the United States land department to persons not quailfied according to the terms of the acts of congress, in which third persons claiming the same lands, as having been *subsequently* acquired, have been denied the right to plead the disqualification, upon the principle that it is a matter between the patentee and the government only. (*Moore* v. *Wilkinson*, 13 Cal. 478; *Terry* v. *Megerle*, 24 ib. 609; *Curle* v. *Burrel*, 3 Sneed, 62.) For the purposes of this case, it may be assumed that if the defendant had no right to or interest in the land, when it was granted to the plaintiffs, the defendant cannot raise the question of qualification or disqualification. But if the defendant then had a right to claim it, he may be heard to defend the right; and if the plaintiffs were not persons qualified to claim under the donation law, his standing upon this question depends on his relation to the land at the time it was granted to the plaintiffs. As has been before remarked, the donation act being in words of present grant, operated to convey the title at the time of its passage to the person possessing the prescribed qualifications and then settled upon the lands; but one not qualified took nothing by his *actual settlement and cultivation.* Whatever color of title passes to such unqualified claimant by virtue of a decision in his favor, he derives from the action and decision of the agents of the government in the land department. In this case the certificate was not issued, and the record discloses no decision made, until September 22, 1862. If the plaintiffs were not within the provisions of the act, they acquired no color of title until that time. The land up to that time was government land,

if the plaintiffs were disqualified. If the defendant's grantor lawfully settled upon the premises before it had been granted to another by the department, and before it was claimed by a qualified settler, his settlement and cultivation immediately gave him an interest. (*Doll* v. *Meador*, 16 Cal. 295: 12 How. 76; 13 Pet. 499.)

His settlement being made before the certificate issued, if the certificate was improperly issued to another, the defendant became so connected with the title as to be authorized to attack the certificate and the patent, if one was improperly issued.

The remaining proposition involves a question of practice upon which but few precedents are to be found, arising since the enactment of state codes dispensing with bills of review. By our code, § 377, whatever subject matter could formerly have been presented by any of the various formal chancery bills, may now be presented by an "original suit." And if the subject matter constitutes a defense, by §§ 72 and 93, it may now be presented by an answer.

Under the equity practice, a party claiming what is claimed by the defendant in this case, would have resorted to the circuitous method of filing a bill of review, or a bill in the nature of a bill of review; (1 Paige, 200; Coop. Eq. Pl. 73; 2 John. Ch. R. 488;) and of enjoining the action at law until he could be heard in equity.

The former decree was rendered on the twenty-second of December, 1863, and the patent was issued to the plaintiffs September 11, 1865. If there was not such error or omission, in the rendition or entering of the decree as would sustain a bill of review, the defendant being *cestui que trust* of the premises, and without any other means of obtaining the legal title or other means of defending himself against the acts of his trustees, would have been allowed to file his supplemental bill, setting up the issuing of the patent.

The plaintiffs should have a decree for the parcel of land not embraced in defendant's deeds, and the defendant should be decreed the residue of the premises. And the decree of December 22, 1863, should be so reformed as to declare the patentee, to that extent, a trustee for this plaintiff, and the trustee should be compelled to convey.