## BARTLETT WHITLOW *v.* GEORGE H. REESE ET AL.

COUNTIES CANNOT PRE-EMPT LAND IN THIS STATE UNDER THE ACT OF CONGRESS OF MAY 26TH, 1824.—The Act of Congress of May 26th, 1824, "granting to the counties or parishes of each State or Territory of the United States, in which the public lands are situated, the right of pre-emption to a quarter section of land for seats of justice in the same," was never in force in this State. Neither was the Town-site Act of May 23d, 1844, in force in this State prior to July 14th, 1854.

APPEAL from Yamhill County.

The facts are stated in the opinion of the Court.

*Boise & Willis, Curry & Hurley and J. N. Dolph,* for Appellant.

*P. C. Sullivan and James McCain,* for Respondents.

By the Court, MOSHER, J.:

The plaintiff in this suit seeks to quiet the title to a tract of forty acres of land, of which he is in possession, and which he claims is a portion of the east half of the donation

land claim of Joel Perkins and wife. He derives his title from Laura A. Patterson, widow of said Perkins. The defendants, George H. Reese and wife, claim that the tract in dispute is a part of the west half of said claim, to which they deraign title from the heirs of said Perkins. The east half has been patented to Laura A. Patterson, the widow, and the controversy arises from the fact that one hundred and sixty acres of said claim, including the site of the town of Lafayette, has been patented to the Board of Commissioners of Yamhill County, thus changing the division line. If Perkins and wife were entitled to a patent for the whole claim of six hundred and forty acres, the title to the tract in dispute is in the plaintiff, but if the County Commissioners can hold the town site, it is in the defendants.

The facts appearing in evidence are, that in 1845, Joel Perkins purchased the claim, on which there was then a log-cabin, from one John Copenhagen, and lived on it, at intervals, until September, 1848, when he went to California. He returned in June, 1849, and resumed his residence. In July, 1850, he was married to Laura A. Hawn, now Laura A. Patterson. On the 8th of October, 1852, he filed in the office of the Surveyor-General of Oregon a notification on six hundred and forty acres, under the fourth section of the Act of 27th September, 1850, known as the Donation Act, and made proof of residence and cultivation from the 30th of June, 1849. On the 8th of April, 1854, he made his final proof of continued residence and cultivation up to that date. Having proved to the satisfaction of the Register and Receiver of the Land Office, a compliance with the conditions of the law, on the 30th of October, 1869, a certificate was issued by them to the widow and heirs at law, for the said tract, with the exception of the town site, in which the east half was designated for the widow. It is admitted that a patent was subsequently issued in accordance therewith.

The defendants have attempted to prove an abandonment by Perkins of that part of the claim included in the town site, and for this purpose introduced a copy of a quit-claim deed, dated 11th May, 1850, signed by Joel Perkins and

one Johnson, to the Board of Commissioners of Yamhill County, for the town plat of Lafayette, but it has only one witness, and is not acknowledged, nor has its execution been proved. What effect this paper might have had on the question, if properly proved, is, however, destroyed by the subsequent notification of Perkins in 1852, and by the positive proof of residence on, or cultivation of, this part of the tract during the whole term of four years.

On the 19th April, 1858, the Board of Commissioners of Yamhill County, having previously obtained the permission of the Commissioner of the General Land Office therefor, entered at the Land Office at Oregon City one hundred and sixty-three and sixty-four one-hundredths acres and received a certificate, upon which, it is admitted, a patent subsequently issued. The patent not having been produced in evidence, there is some doubt as to the Act under which this entry was permitted. In a letter dated 28th December, 1859, the Commissioner writes: "In the case of the town, the Board of Commissioners for Yamhill County were permitted to make an entry under the town-site law of 23d May, 1844." He also refers the claim to the town-site law under the date of 24th October, 1868. If this is the fact the question is no longer an open one. The Supreme Court of the United States have decided that the Act of 23d May, 1844, was not in force in Oregon prior to the 14th July, 1854. (*Stark* v. *Starr*, 6 Wall. 402.)

"Although the town-site law was in force in Oregon in the year 1858, when this entry was made, no land could be appropriated under it for the benefit of occupants of town sites, which had already been granted to others by the terms and conditions of the Donation Law. The Donation Law is a grant in the present, and gives the fee-simple to every settler who avails himself of its provisions from the date of his settlement. True, until the completion of the subsequent conditions of residence and cultivation and proof thereof, it is an estate upon condition, what is known at common law as a base or conditional fee, subject to be defeated or lost by a failure to perform the conditions upon which it is held. But it is an estate in fee nevertheless,

and upon the completion of the residence and cultivation, or other conditions, it becomes absolute and unqualified." (*Chapman* v. *School Dist. No.* 1, 1 Deady, 113.)

Perkins had completed his four years' residence and cultivation on the 30th June, 1853, before the town-site law was extended to Oregon; hence the entry by the County Commissioners and the patent under it was, in the language of Judge Deady, without color of law or authority, and simply void.

It is claimed in the argument, although we do not find any evidence of the fact, that this entry was made under the Act of 26th May, 1824, entitled "An Act granting to the counties or parishes of each State or Territory of the United States, in which the public lands are situated, the right of pre-emption to a quarter section of land for seats of justice in the same." This Act was never in force in this State. In organizing the Territory of Oregon by the Act of 1848, Congress declared that the laws of the United States should be in force in said Territory, "so far as the same or any provision thereof may be applicable." It has never been held that this provision had the effect of extending over the State any portion of the land system of the United States in advance of the public surveys, upon which that system rested, and without which, as the law then stood, that system was inoperative. (*Stark* v. *Starr, supra.*)

Congress passed no law in anywise affecting title to lands in Oregon Territory till 27th September, 1850. (*Lownsdale* v. *Parrish*, 21 How. 290.)

The Supreme Court of the United States, as we have before stated, have decided that this Act did not extend to Oregon either the Pre-emption Act of 1841, or the Town-site Act of 1844. The County-seat Act of 1824 is a part of the land system in force at that time, which has never, by any other Act, been extended to this State.

The patent to the County Commissioners for the town site being void, the only remaining question is as to the residence and cultivation of Perkins on this portion of the tract. His notification included the whole of the six hundred and forty acres, and his proof, which was satisfactory to the Commis-

sioner of the General Land Office, extended over the whole tract. That officer based his refusal to extend the patent, not upon a failure of residence and cultivation, but upon the supposed conveyance by Perkins & Johnson, in May, 1850. This opinion is unquestionably erroneous. If the deed referred to had been legally executed and proven, which it is not, still it would not be binding upon the estate afterwards acquired by Perkins under the Donation Act. This would be a proper construction of the law in case of a conveyance with covenants of warranty, or any express stipulation or agreement from which it would reasonably appear that the parties dealt and bargained with reference to the possibility or contingency of the grantor or vendor acquiring title from the United States; but a simple quit-claim by Perkins during his occupancy and before the passage of the Act granting the land, would in nowise affect the after-acquired estate in the premises. (*Chapman* v. *School District No. 1*, 1 Deady, 150.)

The Court, therefore, finds that Perkins was entitled to a patent for the whole tract, as described in his notification, according to his claim survey, and that the division line, as claimed by the plaintiff, is the correct one.

Decree for plaintiff.