Martin, J.
On-October 8,1885, the attorney general commenced this ease against the defendant, alleging that a certain building therein described, in the city of Atch'isori, is a place where intoxicating liquors are and have been, for several months last past, bartered, sold and given away, and where intoxicating liquors are kept for ■barter, sale and gift, in violation of law; that said place is a nuisance, and that the defendant is the keeper thereof, and that the defendant has no permit granted or issued by the probate judge of Atchison county, Kansas, authorizing him to sell, barter or give away, or keep for barter, sale or gift,- any intoxicating liquors, and graying that said place be adjudged a common nuisance; and that an order may issue directing the sheriff or other proper officer to shut up and abate said place, and that the defendant may be perpetually enjoined from using, or permitting to be used, the said premises as a place where intoxicating liquors are sold, bartered or given .away, or are kept for barter, sale or gift, otherwise than by authority of law; and that in the meantime, and until the further order of the court, a temporary injunction may be issued against the defendant. The petition is duly verified by the attorney general. The action is brought under the clause of section 13 of the prohibitory act of 1881, which was added to by the act of March 7, 1885. Prior to the last mentioned date there was no statutory remedy for the enforcement of the prohibitory .act except by criminal prosecution, but since that time the State has been authorized to invoke the equity powers of the courts, as well as their criminal processes, to suppress the illegal traffic in intoxicating liquors.
The defendant has filed an amended answer, in which he alleges that said act of. 1885 is in contravention of article 4, (amendment,) and section 1, of article 14, of the Constitution of the United States; that said act of the Legislature is class legislation, and denies to the defendant the equal protection of the laws; that the enforcement of said act in. the proceedings instituted by the plaintiff herein will deprive the defendant of his property without due process of law, and subject him to unreasonable searches, and his papers and effects to unreasonable seizure, without any probable cause therefor, without being supported by oath or affirmation describing the place to be searched, and the person or thing to be seized; that the property of the defendant which will be affected by the granting of the prayer of plaintiff’s petition filed herein exceeds the value of $2,000, and if said act of the Legislature, and the provisions thereof sought to be enforced, shall be held valid and not in conflict with the Constitution of the United States, then that the defendant will be subject to great and irreparable damage, and his property, to the extent in value of $2,000, will be practically destroyed and confiscated without compensation therefor ; and that a large portion of said property was so owned by the defendant prior to 1881, and prior to the enactment of the prohibitory law of this State, or the adoption of the amendment prohibiting the barter and sale of intoxicating liquors except for medical, mechanical and scientific purposes. The defendant also admits that he has not taken out any permit as a druggist, to sell, barter or give away intoxicating liquors, but he denies that he is now engaged in the unlawful sale of intoxicating liquors in any manner whatever, or that he keeps intoxicating liquors for unlawful sale in said building, as set forth in plaintiff’s petition.
*119 The defendant has filed an amended petition for the removal of the cáse to the United States circuit court for the district of Kansas for trial. He alleges in said amended petition that the amount in controversy, exclusive of costs, exceeds the sum of $500; that any interference with his business will damage him largely in excess of the sum of $500, exclusive of costs, and that the amount of property involved in this controversy which will be affected by the decision of this action is of the value of more than $500 exclusive of costs. He also sets up in his amended petition, more fully than in his amended answer, the grounds on which he claims that the prohibitory acts contravene the provisions of the Constitution of the United States.
If the record in this case shows that a correct decision thereof involves the construction ©f any clause of the Federal Constitution', and that “ the matter in dispute exeeeds, exclusive of costs, the sum or value of $500,” then, upon proper bond being offered, it is the duty of this court to proceed no further in the suit, except to certify it to the proper federal court for trial. But if the record fails to show either one of said facts, then there is no authority to remove the case out of this court.
Probably no federal question is raised upon the record in this case, unless it be such as has heretofore been decided adversely to the claims of the defendant by the Supreme Court of the United States. It has long been settled that ths first ten amendments to the Constitution of the United States which were proposed, at the first session of the first Congress were’intended as limitations upon the powers of the Federal Government, and not as restrictions upon the authority of the States, This doctrine was first authoritatively declared by Chief Justice Marshall more than half a century ago, in Barron vs. The Mayor and City Council of Baltimore, 7 Peters, 243, since which time it has been frequently followed without question. (Livingston’s Lessee vs. Moore, 7 Pet. 469, 551, 552; Fox vs. State of Ohio, 5 How. 410, 434, 435; Smith vs. State of Maryland, 18 How, 71, 76.)
The fourth amendment, which is directed against unreasonable searches and seizures, and the fifth amendment, which provides, among other things, that private property shall not be taken for publicarse without just compensation, may therefore be treated as entirely out of the case.
Prior to the adoption of the fourteenth amendment, it was fully conceded by the Supreme Court of the United States that the regulation of the retail liquor trafile was purely and exclusively a matter of State control. As early as the License Cases, 5 How. 504, 631, decided in 1846, Justice Grier said:
” It has been frequently decided by this court that the powers which relate to merely municipal regulations, or what may more properly be called internal police, are not surrendered by the States, or restrained by the Constitution of the United States, and that consequently, in relation to these, the authority of a State is complete, unqualified and conclusive. Without attempting to define what are the peculiar subjects or limits of this power, it may safely be affirmed that every law for the restraint and punishment of crime, for the preservation of the public peace, health and morals, must come within this category.”
If there is any federal question in this case, it arises solely from that part of the fourteenth amendment which reads as follows:
“ No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.”
In the Slaughter House Gases, 10 Wall. 36, decided in 1872, the Supreme Court *120 very fully considered, for the first time, the general scope and purposes of these clauses. It appears that the legislature of Louisiana, on March 8, 1809, passed an act confering upon tire defendant company, a corporation created by the act, the exclusive right for twenty-five years to have and maintain slaughter houses, landings for cattle and yards for confining cattle intended for slaughter within the parishes of Orleans, Jefferson and St. Bernard, a territory comprising an area of 1104 square miles, including the city of New Orleans, and prohibiting all other persons from building, keeping or having slaughter houses, landings for cattle and yards for confining cattle intended for slaughter within the said limits, and requiring that all cattle and other animals to be slaughtered for food in that district should bo brought to the slaughter houses and works of said company to be slaughtered, upon the payment of a feo and certain perquisites to the company for such service. The plaintiffs, an association of butchers, averred that prior to the passage of the act in question they were engaged in the business of procuring and bringing to said parishes animals suitable for human food, and in preparing the same for market; that in the prosecution of this business they had provided in these parishes suitable establishments for landing, sheltering, keeping and slaughtering cattle and the sale of meat; that with their association about 400 persons were connected, and that in said parishes almost 1,000 persons wore thus engaged in procuring, preparing and selling animal food. It is evident that the establishments of the plaintiffs would be rendered almost valueless, and their business substantially broken up by the operation of the monopolly created by the 'egislature, and yet the Supreme Court held that this legislation was not in contravention of an\' of the provisions of -the fourteenth amendment, hut that it was a valid exercise of the police power of the state of Louisiana, with which the federal courts could not rightfully inte.-fere. The four dissenting justices placed their dissent upon the ground that, although the act was entitled “An act to protect the health of the city of New Orleans, to locate the stock landings and slaughter houses, and to incorporate the Crescent. City Live Stock and Slaughter House Company,” and thereby purported to ho a police regulation, yet. Unit this was a mere pretext for the creation an.l maintenance of a gigantic and unconscionable monopoly, and the invasion of the right of plaintiffs to pursue their lawful calling.
In Bartemeyer vs. State of Iowa, 18 Wall. 129, 133, decided in 1873, it is expressly held that the right to sell intoxicating liquors is not one of the privileges and immunities of citizens of the United States which by the fourteenth amendment the States were forbidden to abridge. Justice Miller, in delivering the opinion of the court, says:
“ The most liberal advocates of the rights conferred by that amendment have contended tor nothing more titan that the rights of the citizen previously existing, and dependent wholly on State laws for their recognition, are now placed under the protection of the Federal Government, and are secured by the Federal Constitution. The weight of authority is overwhelming, that no such immunity lias heretofore existed as would prevent-State Legislatures from regulating and even prohibiting the trafile of intoxicating drinks, with a solitary exception. That exception is the case of a law operating so rigidly on properly in existence at the time of its passage, absolutely prohibiting its sale, as to amount to depriving the owner of his property. A single case, (Wynehamcr n. The People, 3 Kernan, 48(1,) lias held that as to such properly the statute would be void for that reason. But no case has held that such a law ivas void as violating the privileges or immunities of citizens of a State, or of the United States. If, however, sucli a proposition is seriously urged, we think that the right to sell intoxicating liquors, so far as such right exists, is not one of the rights growing out of citizenship of the United States, and in this regard the case falls within the principles laid down by this court in the .'¡laughter House Cases.”
All the justices concurred in this decision.
*121 In the concurring opinions of Justices Bradley and Field, two of the dissenting justices in the Slaughter House Cases, these learned jurists expressed with force and clearness the distinction taken by them between this case and the Slaughter House Cases.
In Boston Beer Company vs. State of Massachusetts, 97 U. S. 25, it was decided in 1877 that all rights are held subject to the police power of a state; that if public safety or the public morals require the discontinuance of any manufacture or traffic, the legislature may provide for its discontinuance, notwithstanding individuals or corporations may thereby suffer inconvenience; that as the police power of a state extends to the protection of the lives, health and property of her citizens, the maintenance of good order, and the preservation of public morals, the legislature cannot by any contract divest itself of the power to provide for these objects. And the court, reaffirming its decision in the Iowra case, hold that, as a measure of police regulation, a state law prohibiting the manufacture and sale of intoxicating liquors-is not repugnant to any clause of the Constitution of the United States. All the justices concurred in thisjdeeision.
In Foster vs. State of Kansas ex rel., 112 U. S. 205, s. c., 32 Kas. 765, decided late in 1884, the validity of our own prohibitory statute of 1881 was challenged, but the court says:
“As the question of the constitutionality of the statute was directly raised by the defendant, and decided against him liy'the court, (the supreme court of Kansas,) we have jurisdiction, and the motion to dismiss must be overruled, but as every one of the questions which we are asked tcSconsider has been already settled in this court, the motion to affirm is granted. In Bartemeyer vs. Iowa, 18 Wall. 129, it was decided that a state law prohibiting the manufacture and sale of intoxicating liquors was not repugnant to the Constitution of'thc United States. This was reaffirmed in Beer Co. vs. Massachusetts, 97 U. S. 25, and that question is now no longer open in this court.”
So tar as any question can arise under; the fourteenth amendment, the law of 1881 was as open to criticism then, as it is now with the amendments of 1885. No person other than a druggist could obtain a permit then, neither can"he now; and this is the defendant's chief, if not nis only ground of complant. But the Supreme Court having held that the act of 1881 vras not in contravention of the Federal Constitution, and the decisions of that tribunal upon that point being conclusively binding upon all of the state courts, as well as all of the inferior federal courts, the question should be held as “now no longer open.”
Is there a “matter in dispute” between the state and the defendant, exceeding, “exclusive of cost's, the sum or value of five hundred dollars?” It has been held in several cases by the Supreme Court that the meaning of these words, quoted from the statute, is that the subject-matter of the suit must be property or money, or some right, the value of which, in money, is susceptible of pecuniary estimation and judicial ascertainment. And no case is removable from the State courts to the inferior federal courts unless it belongs to this classs. (Barry vs. Mercien, 5 How. 103, 119, 120; Pratt vs. Fitzhugh, 1 Black 271, 273; De Krafft vs. Barney, 2 Black, 704: Lownsdale vs. Parrish, 21 How. 290; Sparrow vs. Strong, 3 Wall. 97, 103, 104; Potts vs. Chumasero, 92 U. S. 358, 361; Youngstown Bank vs. Hughes, 106 U. S. 523, 524, 525.)
Under the pleadings in this case neither party can recover of the other a judgment for any money or property, or other valuable thing, except for costs. Neither the state nor the relator can derive any pecuniary benefit from a judgment in favor of the plaintiff, and except as to Ihe costs, the. defendant need not lose: any money *122 or property by an adverse judgment. It is questionable whether the provisions relating to the seizure and destruction of property kept and used for carrying- on the illegal traffic are applicable to the civil remedy given by the legislature of 1885. Tf, however, the seizure and destruction of such property should follow a judgment in such case, it would only be an indcident, not a necessary consequence of such judgment. It could not be truthfully said that such property was ‘‘the matter in dispute” in the suit. The defendant might lawfully sell and dispose of any such property, except the intoxicating liquors, to any person at any time before actual seizure, and he might in like manner sell and dispose of such liquors for any lawful purpose, provided he could obtain a permit; anil there has never been a time in the history of the state when a person could lawfully sell intoxicating liquors, even for the most necessary purposes, without a permit or license from the proper public authorities.
Neither is the profit which the defendant might make by the liquor traffic, nor the loss entailed by its enforced discontinuance, “the matter in dispute” in the action. The issues do not involve an inquiry into pecuniary profits or losses. Some criminal cases result in the payment of a fine by the defendant, yet the “matter in dispute” between the state and the defendant is not the fine but the guilt or innocence of the defendant, and all of the proceedings in the case are directed to that issue.
If this case involved an inquiry into profits and losses, on what basis would the estimate be made? I-Iow, and for what period must the profits be computed or the losses estimated? No question is made upon the validity of the prohibitory amendment, and it is admitted that intoxicating liquors can be lawfully sold only for medical, scientific and mechanical purposes. The profit upon sales of such liquors as a beverage, or for any other than the three excepted purposes, could not be included in the estimate. No right to a profit upon the violation of the Constitution and laws of the state could arise, for this would be to found a right upon the commission of a wrong. "With a permit, the defendant may sell such liquors for any of the three excepted or lawful purposes. But he contends for the right to sell such liquors for the excepted purposes without a permit. Upon the defendant’s theory the only “matter in dispute” between himself and the state, is, therefore, the difference between the value of the right to sell such liquors for the excepted and lawful purposes with a permit, and the value of such right without it, and he seeks to set up this difference as “the matter in dispute” for the purpose of obtaining a removal. In other words, in an action brought by the state to enforce a police regulation against the defendant, he claims that if the statute is carried into effect he will, as a'result, sutler a loss exceeding the sum of $500. But this is only an attempt to substitute for the subject-matter of the litigation appearing from the issues the supposed future incidental results of that litigation.
The essential nature of the case cannot be changed by the defendant's petition for removal, although verified by affidavit. (Youngstown Bank m. Hughes, supra.) And it appearing upon the whole record that this is an action to enforce a police regulation wherein “the matter in dispute” is not money, nor any oilier thing having “a known and certain value which can he proved and calculated In the ordinary mode of a business transaction,” the case is not removable into the United States circuit court for trial. (Barry rx. Murcien, supra.) If this case after judgment, here shall be taken by either party to the supreme court- of the state, and the decision of that tribunal shall be adverse to the defendant on the federal questions which he seeks to raise, then, under section 25 of the judiciary act of 178!) (section 70!), revised statutes), he may have a review of such questions in the Supreme Court of the United States without regard to the sum oí- value of “the matter in dispute,” provided that his writ of error shall not be dismissed as frivolous because of the repeated decisions of that court upon said questions.
The application for removal will therefore be refused, and the case will be retained for trial here. — Kansas Law Journal.